JOHN R. HOUSE, APPELLANT, v. WILLIAM R. LEWIS, APPELLEE.

FILED MARCH 28, 1922.   No. 21884.

1.   Evidence considered, and *held* to present questions of law only.

2.   Landlord and Tenant:   RENT:   PLACE OF PAYMENT.   Where a lease for the payment of rent for the use of real property is silent as to the place of payment, the law fixes the place of payment upon the leased premises.

3.   ———:   ———:   FORFEITURE.   The undisputed evidence in this case shows that the lease was silent as to the place of payment; that defendant was always ready, able and willing to pay the rent upon the demised premises; that plaintiff at no time went to or sent any one to the demised premises for the rent; that plaintiff at no time or place requested payment of the rent.   *Held*, that defendant was not in default under his contract and was not holding over his term, and his lease was not subject to forfeiture by the plaintiff.

APPEAL from the district court for Thurston county: GUY T. GRAVES, JUDGE.   *Affirmed.*

*Curtis L. Day* and *Archie M. Smith,* for appellant.

*Keefe & Knoepfler, contra.*

House v. Lewis.

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, ALDRICH and FLANSBURG, JJ., HOSTETLER and MORNING, District Judges.

HOSTETLER, District Judge.

This was an action in forcible entry and detainer. The matter was tried and submitted to a jury and a verdict returned in favor of defendant. From a judgment entered thereon, the plaintiff appeals.

The defendant was in possession of certain Indian lands as tenant under a government lease. By the terms of this lease defendant was required to pay as rent $80 on the 1st of March and $80 on the 1st of November of each year. The written lease specified no place for the payment of rents, merely reciting that rents should be payable to the superintendent of the Omaha agency. Such agency was acting as trustee for the Indians to whom the lands had originally been allotted. While defendant was in possession under his lease, and on January 24, 1919, these lands were sold to the plaintiff and the deed to plaintiff immediately recorded. Plaintiff did not at once notify the defendant of his purchase of the property, but the defendant learned through others that such purchase had been made, and on March 1, 1919, sent by check to the plaintiff the $80 rental due at that time. Plaintiff did not acknowledge receipt, and defendant testifies that he was not then sure whether the rent had ever been received. However, defendant did testify, and his testimony is uncontradicted, that in June of that same year he met the plaintiff and plaintiff told him that he had purchased the land, but that defendant made no inquiry as to whether or not the March rent had been received. In August defendant again met the plaintiff, but had no further conversation with regard to the land. At the time the November rent became due, defendant testifies that he had learned that the Indians were complaining and were making statements that they were going to endeavor to get the land back from the plaintiff. Defendant testifies that he did not, at that time, send

the rental to the plaintiff, since he had decided that he would first see the plaintiff and talk the matter over with him. Defendant went to Pender some time late in the year 1919, or in the fore part of 1920, but did not find the plaintiff in town. The November rent remained unpaid, and on February 28, 1920, plaintiff served upon the defendant, in compliance with the statute, a three days' notice, ordering the defendant to vacate the premises. Defendant immediately after the service of this notice mailed a letter addressed to plaintiff at Pender, where plaintiff resided, inclosing a check in the amount of $160, to cover the rent due November, 1919, as well as the rent to become due in a few days, on March 1, 1920. This check was promptly returned by the plaintiff, with a letter stating that he would accept the past-due November rent, but that he would not accept the March rent. On March 4, 1920, the defendant went to Pender and there met the plaintiff, gave him a check for the November rent, and made a tender in currency of the rent due on March 1. The plaintiff accepted the November rent in settlement of the amount due for the period covered, but refused to accept the March rent, still insisting upon a forfeiture of the lease by reason of the defendant's default.

The trial court submitted to the jury, as issues of fact, the question of whether or not defendant knew that plaintiff had become the owner of the land and whether he knew where plaintiff could be found; the question of whether or not the defendant was in default; and the question of whether or not the plaintiff had waived such default. The jury's verdict on these issues was in favor of the defendant.

After a careful consideration of the evidence we have reached the conclusion that there were no disputed facts to submit to the jury in this case. The case must be decided as a matter of law. The lease was in writing, but did not specify where the rent should be payable.

It is the general rule that payments must be made, in the absence of an agreement fixing the place of payment, where the creditor resides, or wherever he may be found;

House v. Lewis.

and ordinarily the debtor in such case is bound to seek the creditor to make payment to him, provided the creditor is within the state when the payment is due. *Esmay v. Gorton*, 18 Ill. 483; *Pomeroy v. Ainsworth*, 22 Barb. (N. Y.) 118; *Sanders' Heirs v. Norton*, 4 T. B. Mon. (Ky.) 464; *Hale v. Patton*, 60 N. Y. 233; 30 Cyc. 1185.

Such, however, is not the rule in contracts for the payment of rent for the use of real property.

In Gear, Law of Landlord and Tenant, sec. 135, it is said: "When the lease is silent as to the place of payment, rent is payable upon the leased premises." See *Burnes v. McCubbin*, 3 Kan. 221; *Fordyce v. Hathorn*, 57 Mo. 120; *Walter v. Dewey*, 16 Johns. (N. Y.) *222; *Hunter v. LeConte*, 6 Cow. (N. Y.) *728; *Van Rensselaer v. Jones*, 5 Denio (N. Y.) 449; *Livingston v. Miller*, 11 N. Y. 80, 91; Coke, Littleton, 201b; Sheppard's Touchstone, 378. *Bergdoll v. Spalding & Bros.*, 234 Pa. St. 588.

In Taylor, Landlord and Tenant (9th ed.) sec. 392, it is said: "And whether payable in money, or in kind, if no place of payment is specified, a tender of either upon the land is good, and prevents a forfeiture." See *Lush v. Druse*, 4 Wend. (N. Y.) 313; *Walter v. Dewey*, 16 Johns. (N. Y.) *222; *Van Rensselaer v. Jones, supra.*

"Although the tenant is not under obligation to seek the landlord, when the contract is silent as to the place of payment, a personal tender to the landlord anywhere is held sufficient." Taylor, Landlord and Tenant (9th ed.) sec. 392.

In 24 Cyc. 1191, it is said: "Where no place is appointed for payment, rent issuing out of land is payable on the land." And "Where rent is payable either in money or kind, and the lease is silent as to the place of payment, a tender of the rent by the lessee upon the land is good; and it is not required of the lessee to make the tender to the lessor personally"—citing *Fordyce v. Hathorn*, 57 Mo. 120, and other cases.

So far as our research has gone, we have found no law to the contrary. There is certainly nothing in the statutes

of Nebraska that changes this rule.   If the contract is silent as to the place of payment, then the law fixes the place upon the leased premises.   The law is reasonable. The landlord and tenant stand upon an equal basis.   It is no greater hardship for the landlord to go to the tenant for his rent than for the tenant to go to the landlord to pay the same.   In the absence of a contract specifying otherwise, the law fixes the place of payment upon the land. The landlord knows exactly where to go for his rent.   If the law were to be interpreted that the tenant must pay to the landlord wherever found in the state, then a great burden might be imposed upon the tenant.   If the landlord wished to be rid of his tenant, then he would be hard to find upon the first of the month when the rent was due.   It is more reasonable, just and fair to have a fixed place for the rent payment as the law now fixes it, than to have the place of rent payment travel about with the person of the landlord.   If the latter rule were in force, the tenant would be in constant danger of having his lease forfeited.   If the parties desire to have a place of payment other than the one fixed by law, then let them agree in their contract upon that point.   It is not the province of this court to change the long-established law to make it easier for the landlord to collect his rent.   In the instant case the rent was by law payable on the premises.   Plaintiff never went to the premises; nor did he send any one for the rent.   If plaintiff had requested payment of the rent upon the premises, it would in all likelihood have been paid.

Section 8467, Rev. St. 1913, provides: "A tenant shall be deemed to be holding over his term whenever he has failed, neglected, or refused to pay the rent or any part thereof when the same became due." This provision of the law clearly means that, when a tenant has wrongfully failed, etc., to pay rent, then he shall be considered as holding over his term. So long as he has not violated the written contract between himself and the landlord he is not in default. The defendant in this case has not breached the lease. He has at all times been ready to comply with his

House v. Lewis.

contract and pay the rent at the place appointed by law. The plaintiff under the contract must call or send for the rent at the place where the same is payable. If he fails to do so, he is himself in default and cannot charge dereliction to his tenant, who was ready to pay him at the place fixed by the law. The defendant was under no obligation, as said in Taylor, Landlord and Tenant, *supra,* to go out and hunt up the plaintiff and pay the rent to him. He had the right to wait until the plaintiff called for the rent at the place where the same was payable. Because defendant did go forth and try to pay plaintiff at some other place will not deprive him of his legal rights under his contract.

It is thus we believe the law to be. Under this view of the law, the undisputed evidence warrants but one conclusion, a verdict and judgment for the defendant. We do not find it necessary to consider any other proposition.

The judgment is

AFFIRMED.

FLANSBURG, J., dissenting.

I do not believe that the cases cited in the opinion are decisive of the question here.

In the case of *Burnes v. McCubbin,* 3 Kan. 221, the court only went so far as to say that, where no place of payment was mentioned in the lease, rent would be payable either at the premises *or in the city* where the property was situated. The court pointed out that the landlord in that case was a nonresident of the state and had no agent in the state, and that the tenant could not, under such circumstances, be expected to go out of the state to hunt him up and tender him the rent.

The case of *Fordyce v. Hathorn,* 57 Mo. 120, did not involve *cash rent,* but only a corn crop grown upon the premises, which renders the case distinguishable.

The New York cases were all very early decisions in that state, and were, I believe, merely a recognition of the common-law rule, requiring the landlord to go upon the premises and demand his rent before being entitled to invoke a forfeiture. By that rule, in order to work a forfeiture

House v. Lewis.

of the terms of a lease, where place for payment of rent
was not specified, it was necessary for a landlord to make
a demand for the precise amount of rent due, just before
sunset on the last day that it might be paid, and at the most
notorious place on the premises. If there was a dwelling-
house upon the land, it was required that the demand be
made at the front door of the same. The failure to make
such demand waived the right of forfeiture, but not the
right to collect the rent.

The New York cases, as well as the decisions in *Bergdoll
v. Spalding & Bros.*, 234 Pa. St. 588, and *Rea v. Eagle
Transfer Co.*, 201 Pa. St. 273, relied on by defendant, have
taken that rule, I believe, to establish that the rent is *pay-
able* on the premises if no place for payment is specified in
the lease. The question of the  common-law demand for
rent does not determine the question of where rent is pay-
able. The place fixed for that demand depended, not upon
the place where the rent might be considered due, but en-
tirely upon another matter; that is, its purpose was to give
notice to the tenant that the landlord intended to invoke
a forfeiture of the lease.

Under the law of forcible entry and detainer, as it exists
in this state, the necessity of a demand by the landlord, as
required at common law, is dispensed with. The failure
of the tenant to pay the rent at the place and time that it
is due makes him a tenant holding over his term.

When a lease provides for *cash rent.* and prescribes no
place for its payment, the question is: Must the tenant
seek the landlord and pay him at his residence or place of
business or where he may be found if easily accessible, or
must the landlord go to the premises to collect the rent?

Where an obligation is payable in articles of property,
as distinguished from money, and where no place of pay-
ment is specified, it seems to be the rule that the debtor is
not obligated, at his cost, to transmit such articles to the
creditor, but that the creditor must call for them at the
debtor's premises. *Grant v. Groshon,* Hardin (Ky.) 85,
3 Am. Dec. 725; 30 Cyc. 1185. Such is also the rule, with

regard to the payment of rent, where the rent is payable in crops grown upon the premises. Since the crop, it is said, issues from the land, the tenant, where no place of delivery is specified in the lease, is required only to gather the crop in readiness for delivery, and the landlord must accept delivery at the leasehold premises, and himself undergo the expense of transportation. *Remsen v. Conklin,* 18 Johns. (N. Y.) 447; *Fordyce v. Hathorn, supra.*

Where rent is payable in money, the transmission of which requires no outlay of expense, I see no reason why the obligation to pay rental should be treated as different from any other money obligation. The rule is well established, where a party contracts to pay money to another and no place of payment is expressly specified, that it is the duty of the debtor, at least if the creditor is in the state or has his domicile or place of business there (*State v. Kenosha Home Telephone Co.,* 158 Wis. 371; *Danser v. Dorr,* 72 W. Va. 430; *Hale v. Patton,* 60 N. Y. 233), to either make payment to the creditor in person or to make or tender payment at his residence or place of business. This rule arises from the presumption or implication of law that the intention of the parties, where the place of payment is not specified in the contract, was that payment should be made to the creditor at his place of business, residence, or wherever found; it being the general duty of the debtor to seek the creditor. *Stoker v. Cogswell,* 25 How. Pr. (N. Y.) 267; *State v. District Court,* 55 Mont. 330; *State v. District Court,* 41 Mont. 84; *Motherstadt v. Newman, Inc., Motor Cars,* 204 Mo. App. 619; *Esmay v. Gorton,* 18 Ill. 483; *Magruder v. Cumberland Telephone & Telegraph Co.,* 92 Miss. 716; *Walker v. Lovitt,* 250 Ill. 543; *Jones v. Main Island Creek Coal Co.,* 84 W. Va. 245; 30 Cyc. 1185.

It is said in 1 Tiffany, Landlord and Tenant, 1095, sec. 187c: "The view that a tender is sufficient if made on the premises, when no place for payment of rent is named by the lease, has been repudiated in England, * * * it being decided that the mere presence of the tenant on the premises, with the amount of rent, on the day fixed for payment,

is not a good defense, if the landlord was not there to receive it, and that a covenant to pay rent 'is analogous to a covenant to pay a sum of money in gross on a day certain, in which case it is incumbent upon the covenantor to seek out the person to be paid, and pay or tender him the money, and for the simple reason that he has contracted so to do.' " See *Haldane v. Johnson*, 8 Exch. (Eng.) 689.

I take it that such should be the rule. The defendant in this case paid his rent in March, 1919, by check, sent to the plaintiff at the town of Pender. The defendant knew where the plaintiff could be found. He knew his place of residence, and it was easily accessible. The plaintiff did nothing which would in any way mislead the defendant or prevent him from making payment of the November rent when it became due. That rent was nearly six months past due and unpaid when the landlord served a notice to vacate. I believe that the facts in the case show that the defendant was clearly in default, and that the plaintiff was entitled to insist upon a forfeiture.