Hast, J.
 

 The question to be determined is whether plaintiff, under the circumstances of- this case, was within the course of his employment at the time he received his injuries.
 

 
 *69
 
 This court has heretofore held that an injury occurs in the course of employment, if there is a causal connection between the injury and some condition, activity, environment or requirement of the employment.
 
 Industrial Commission
 
 v.
 
 Weigandt,
 
 102 Ohio St., 1, 7, 130 N. E., 38;
 
 Industrial Commission
 
 v.
 
 Ahern,
 
 119 Ohio St., 41, 162 N. E., 272, 59 A. L. R., 367;
 
 Malone
 
 v.
 
 Industrial Commission,
 
 140 Ohio St., 292, 303, 43 N. E. (2d), 266; 42 Ohio Jurisprudence, 626, Section 50.
 

 Of course; if an employee has no authority to be at the place where he is injured, or is there on no business connected with his employment, but solely for purposes of his own, his injury does not arise out of or in the course of his employment.
 

 In the instant case, the relationship of plaintiff to his recent employer at the time of his injury had a two-fo)d aspect. He first went to the office of the coffin company to collect his wages. Learning that he would have a waiting period before he could procure his money, he went to the boiler room, where he had previously worked, to pick up some of his work clothes which were not available to him on the day he quit work. Having-secured the clothing, he was returning- to the pay office when he suffered his injury. The commission claims that plaintiff was on a mission of his own in pursuing the latter of these objectives, and that he was not in the course of employment by the coffin company, at least until he had again reached the pay office. On the other hand, plaintiff claims that he was rightfully on the premises of the coffin company primarily to procure his pay, and incidentally to pick up property belonging to him; that both objectives were incidents of his employment; and that his contract of employment was not terminated until these objectives were accomplished.
 

 Clearly, he was not a trespasser in going to the boiler room for his clothing which he had worn while at
 
 *70
 
 work there. He had a right to pick up his own personal property which he was unable to take' away with him when he quit work, and no complaint seems to have been made by the coffin company concerning his conduct in that regard. Acts of an employee done within a reasonable period of time after actual working hours in making the necessary preparations to terminate his employment, are incidents of and within the course of his employment' within the meaning and operation of the workmen’s compensation laws. See
 
 Rayner
 
 v.
 
 Sligh Furniture Co.,
 
 180 Mich., 168, 146 N. W., 665, L. R. A., 1916A, 22, annotations page 40; 42 Ohio Jurisprudence, 640, Section 57. See, also, the rule applied in the following cases:
 

 Mitchell
 
 v.
 
 Consolidated Coal Co.,
 
 195 Iowa, 415, 192 N. W., 145 (a miner who was quitting his job and was injured while going down a manway to get his tools, held, within the course of his employment);
 
 Molloy v. South Wales Anthracite Colliery Co.
 
 (1910), 4 Butterworths’ Workmen’s Compensation Cases (N. S.), 65 (workman, a few days after leaving his work, obtained leave to go down into a mine to bring up his tools and while there for that purpose was injured, held, injury arose out of employment).
 

 However, as above stated, the primary motive of plaintiff in going to the plant of the coffin company was to secure his wages. He first called for his wages and if he had received them there would have been no occasion for him to retrace his steps on the ladder where he was injured in attempting to return to the pay office. On the other hand, he had procured his clothing and was definitely on his way back to the pay office when he was injured. The real question to be determined is whether he was in the course of his employment when on his way to the office for his wages.
 

 On general principle of contract, it is the duty of the debtor, if he and his creditor are residents of the
 
 *71
 
 same community, to go to Ms creditor and pay Mm. 40 American Jurisprudence, 723, Section 17;
 
 House
 
 v.
 
 Lewis,
 
 108 Neb., 257, 187 N. W., 784, 23 A. L. R., 877.;
 
 Catlin
 
 v.
 
 Reed,
 
 141 Okla., 14, 283 P., 549, 67 A. L. R., 1410. However, tliis rule has no application in modern industrial employments involving large numbers of employees. It is the well established custom, which becomes a part of the contract of employment, that the employee shall go to the pay office of the employer for his pay on or after regular payday fixed by the employer. The contract of employment, as to the matter of wages and their payment, is not fully terminated or satisfied until the workman’s wages, already earned, are paid. It was not only the right but the duty of plaintiff to go to the coffin company plant and obtain his wages. He could not require the company to search him out and pay him elsewhere. Pie was a licensee and not a trespasser in going to the office for his wages.
 

 By the great weight of authority, a workman, who, being unable to procure his pay when he severed his employment, is injured when he returns to the premises of his employer for that purpose, is acting in the course of. his employment under the workmen’s compensation laws. Where an employee, who was not working on the day on which he received his pay, was told by his employer that he would have to call for his pay, was injured by falling on an icy sidewalk on the premises of his employer while leaving the pay office with his pay, such injury arose in the course of Ms employment.
 
 Crane Co.
 
 v.
 
 Industrial Commission,
 
 306 Ill., 56, 137 N. E., 437.
 

 Where an employee of a logging company, in one of its camps, being about to take a vacation, was given a time slip and was told to go, as was customary, by one of the company’s logging trains to its office in a village some miles away to get his pay, and while riding on
 
 *72
 
 such train was accidentally injured, it was held that he sustained such injury while in the employ of the logging company and while performing service growing out of and incidental to his employment.
 
 Hackley-Phelps-Bonnell Co.
 
 v.
 
 Industrial Commission,
 
 165 Wis., 586, 162 N. W., 921, L. R. A. 1918A, 277.
 

 A mill hand whose employment had ended on Wednesday went to her employer’s mill on Friday, which was payday, to receive her wages. She met with an accident while leaving the pay office. It was held that the injury was in the course of her employment.
 
 Riley
 
 v. W.
 
 Holland & Sons, Ltd.
 
 (1911), 1 K. B., 1029, 104 L. T. Rep., 371, 4 Butterworths’ Workmen’s Compensation Cases (N. S.), 155.
 

 The English rule is that where a workman remains on the premises or returns thereto to obtain his pay after work ceases, he is still acting in the course of his employment.
 
 Riley
 
 v.
 
 W. Holland & Sons, Ltd., supra; Molloy
 
 v.
 
 South Wales Anthracite Colliery Co., supra.
 

 The court is of opinion that the plaintiff was within the course of his employment at the time he received his injury.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Zimmerman, Bell and Williams, JJ., concur.
 

 Turner and Matthias, JJ., dissent.